UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                               )
PERFECT PUPPY, INC.            )
                               )
          Plaintiff,           )
                               )
     v.                        )       C.A. No. 14-257 S
                               )
CITY OF EAST PROVIDENCE,        )
                               )
          Defendant.           )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Plaintiff, Perfect Puppy, Inc., a pet store, has brought a declaratory judgment action to invalidate an ordinance passed by Defendant, the City of East Providence (the "City"). Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is DENIED and Defendant's motion (ECF No. 10) GRANTED as to all counts in Plaintiff's Amended Complaint (ECF No. 6) except Count Three, which is REMANDED to the Rhode Island Superior Court.[1]

I.   Background

Plaintiff initially sued the City in Rhode Island Superior Court in June 2014, after which the City removed the case to this Court. The parties have stipulated to the relevant facts.

_____
[1] In Count Seven of its Amended Complaint, Plaintiff seeks only injunctive relief and does not assert any claims.

(Agreed Stipulation of Facts ("Stip."), ECF No. 9). Plaintiff entered into a lease on April 26, 2014, for a space in the City to be used "only for the purposes of a Puppy Sales store," according to the lease. (Id. at ¶ 3; Ex. B at ¶ 7.)

On May 20, 2014, an ordinance banning certain commercial transactions in dogs and cats was introduced and preliminarily passed by the East Providence City Council. (Id. at ¶¶ 4, 8.) The next day, on May 21, 2014, Plaintiff obtained its Rhode Island pet store license. (Id. at ¶ 5.) Plaintiff opened its store that day. (Id. at ¶ 6.) The City Council held a public hearing regarding the proposed ordinance on June 3, 2014, at which members of the public raised concerns about "puppy mills." (Id. at ¶¶ 7, 8.) The City Council passed the ordinance on that date. (Id. at ¶ 7.) It states, in relevant part:

> (b) It is unlawful for any person to display, offer for sale, deliver, barter, auction, give away, transfer, or sell any live dog or cat in any pet store, retail business or other commercial establishment located in the City of East Providence.

> (c) Nothing in this section shall prevent the owner, operator, or employees of a pet store, retail business, or other commercial establishment located in the City of East Providence from providing space and appropriate care for animals owned by a city animal shelter or animal control agency, humane society, or non-profit rescue organization and maintain those animals at the pet store retail business or other commercial establishment for the purpose of public adoption.

Revised Ordinances of the City of East Providence, Chapter 3, Article V., § 3-68. (Stip. Ex. A, ECF No. 9-1.)

In its Amended Complaint, Plaintiff raises numerous challenges to the ordinance under the Constitutions of the United States and of Rhode Island, claiming that it violates the dormant Commerce Clause, the Contract Clause, the Takings Clause, and Plaintiff's equal protection and due process rights, and that it is preempted by state statute. Plaintiff and Defendant both seek summary judgment as to all of these challenges.

II. Discussion

Summary judgment is appropriate when, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009). The same legal standard applies when the parties file cross-motions for summary judgment. Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."

_Bienkowski v. Ne. Univ._, 285 F.3d 138, 140 (1st Cir. 2002) (internal citation and quotation marks omitted).

Because the parties have agreed to the material facts, the Court must now determine whether either party is entitled to judgment as a matter of law on these facts. _Barnes v. Fleet Nat'l Bank, N.A._, 370 F.3d 164, 170 (1st Cir. 2004).

A.   Commerce Clause Claims

The "negative" or "dormant" aspect of the Commerce Clause "denies the states the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." _Oregon Waste Sys., Inc. v. Dep't of Envt'l Quality_, 511 U.S. 93, 98 (1994). "A statute that discriminates on its face against interstate commerce, whether in purpose or effect, demands heightened scrutiny." _Wine & Spirits Retailers, Inc. v. Rhode Island_, 481 F.3d 1, 10 (1st Cir. 2007) (citing _Alliance of Auto. Mfrs. v. Gwadosky_, 430 F.3d 30, 35 (1st Cir. 2005)). A discriminatory statute is therefore invalid "unless it furthers a legitimate local objective that cannot be served by reasonable non-discriminatory means." _Id._ at 10-11 (citing _Oregon Waste Sys._, 511 U.S. at 99-101).

However, legislation that "regulates evenhandedly and has only incidental effects on interstate commerce" is not presumed to be invalid. _Wine & Spirits Retailers_, 481 F.3d at 11

(internal citation and quotation marks omitted). Rather, a lower level of scrutiny applies, and the statute undergoes the balancing test set forth in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970). Wine & Spirits Retailers, 481 F.3d at 11. A statute that operates evenhandedly to implement a legitimate local interest, and only incidentally impacts interstate commerce, is valid so long as the burden it imposes on interstate commerce is not "clearly excessive in relation to the putative local benefits." Id. (quoting Pike, 297 U.S. at 142).

### 1. Discriminatory Effect

Plaintiff sets forth two somewhat conflicting theories in support of its argument that the ordinance discriminates in practical effect, therefore requiring heightened scrutiny. One of its theories can be easily ruled out. Plaintiff points out that the ordinance allows an out-of-state merchant to continue to sell dogs and cats in the City, while City merchants cannot sell them within or outside of the City.[2] Thus, it claims, the problem with the ordinance is what it calls "reverse discrimination," in that local businesses are burdened by their inability to participate in interstate commerce. Given that the Commerce Clause seeks to protect interstate commerce, not local

---

[2] The Court assumes for present purposes that this reading of the ordinance is accurate.

interests, this argument is truly barking up the wrong tree. Plaintiff cites no authority to support its "reverse discrimination" theory, likely because such an interpretation is contradicted by virtually every case addressing the issue. <u>See, e.g.</u>, <u>Wine & Spirits Retailers</u>, 481 F.3d at 10; <u>Alliance of Auto. Mfrs.</u>, 430 F.3d at 35; <u>Houlton Citizens' Coal. v. Town of Houlton</u>, 175 F.3d 178, 188-89 (1st Cir. 1999).

Plaintiff's next argument on discriminatory effect likewise misses the mark. According to Plaintiff, because it buys dogs exclusively from out-of-state breeders, prohibiting pet stores from selling cats and dogs has the effect of discriminating against out-of-state interests.[3] However, the fact that certain goods originate out of state does not prevent the imposition of regulations on those goods in state. <u>Hyde Park Partners, L.P. v. Connolly</u>, 839 F.2d 837, 844 (1st Cir. 1988). Indirectly reducing purchases that happen to be made exclusively from out-of-state suppliers is a far cry from "invidiously discriminat[ing]" in practical effect. <u>Cherry Hill Vineyard,</u>

---

[3] Plaintiff stated at the June 3, 2014 hearing that it must import puppies from out of state weekly. Plaintiff argues that because there are no USDA-licensed commercial dealers in Rhode Island, Plaintiff is forced to import from out of state, and because its purchases from out-of-state breeders will cease, the ordinance impacts interstate commerce. The Court assumes for present purposes that Plaintiff's assertions relating to its purchases are true.

LLC v. Baldacci, 505 F.3d 28, 36 (1st Cir. 2007) ("In the absence of any explicit (i.e., facial) discrimination, the plaintiffs must persuade [the Court] that [the state's] evenhanded requirement . . . camouflages some more sinister reality: that its practical effect is invidiously discriminatory."). The loss of Plaintiff's business to out-of-state breeders is not "probative evidence of adverse impact" sufficient to support a Commerce Clause claim based on discriminatory effect. Id. This is especially true given that the prohibition of dog sales provides no accompanying benefit to any in-state business. See Cavel Int'l, Inc. v. Madigan, 500 F.3d 551, 555 (7th Cir. 2007) (finding no discrimination where "[n]o local merchant or producer benefits from the ban on [horse] slaughter"); Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 312 (1st Cir. 2005); cf. C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 389 (1994) (ordinance that prevented out-of-state business from accessing local market and simultaneously allowed only a local business to access that market had discriminatory effect on interstate commerce).[4]

---

[4] The parties dispute the ordinance's applicability to internet or other remote sales. Even if the ordinance is read to prohibit the remote sale of dogs and cats within the City, such a prohibition is no more invidiously discriminatory than its ban of pet store and other commercial sales.

Because the challenged effects of the ordinance on interstate commerce are at most incidental, unless the ordinance facially discriminates, it is not presumptively invalid, and need only survive the Pike balancing analysis, discussed further below.

    2.    Facial Discrimination

The Court next turns to Plaintiff's claims of facial discrimination. Plaintiff maintains that the challenged ordinance is facially discriminatory in that it "sets up a Rhode Island based market for the sale of dogs and cats." (Pl. Br. 7, ECF No. 11-1.) This is a skewed reading of the ordinance. Section (b) of the ordinance prohibits the sale of dogs and cats in commercial establishments in the City, making no distinction between the in-state and out-of-state nature of such establishments. Section (c) clarifies that Section (b) should not be read to prohibit certain non-commercial entities from offering dogs and cats for adoption, and that pet stores and other commercial establishments may still provide space and care for animals owned by these non-commercial entities for the animals' adoption. The non-commercial entities named include "a city animal shelter or control agency," and certain Rhode Island non-profits, but also out-of-state rescue organizations and humane societies.

Based on these distinctions, it is by no means clear that the statute can be read fairly to discriminate against out-of-state "economic interests," as Plaintiff claims.[5] But the Court need not reach this issue because just as in Wine & Spirits Retailers, Plaintiff lacks standing to challenge the ordinance on the basis of any facial distinctions between in-state and out-of-state agencies. 481 F.3d at 12.

In Wine & Spirits Retailers, plaintiffs sought to challenge Rhode Island General Laws Section 3-5-10, for facially discriminating against interstate commerce. 481 F.3d at 12. The law limited the issuance of liquor licenses to Rhode Island residents. R.I. Gen. Laws § 3-5-10(a)(1). Wine & Spirits Retailers found that plaintiffs, who were Rhode Island residents, had "failed to show any cognizable harm, direct or indirect, attributable to the residency requirements of section 3-5-10." 481 F.3d at 12. Rather, the injuries of which they complained arose from the statutory scheme's ban on franchise and chain-store arrangements. Id. Thus, plaintiffs lacked standing to challenge the law based on the law's residency requirements. Id.

---

[5] Plaintiff assumes, without substantiation, that offering animals for adoption implicates the same economic interest as selling them.

As in *Wine & Spirits Retailers*, the legislative defect asserted by Plaintiff does not derive from any distinction between in-state and out-of-state entities. Rather, Plaintiff's asserted injury stems entirely from the prohibition of certain transactions in dogs for profit. Although "cognizable injury is not restricted to those members of the affected class against whom [local legislation] ultimately discriminate[s]," Plaintiff must show at least indirect harm deriving from the challenged distinction. *Houlton Citizens' Coal.*, 175 F.3d at 183; *see also Wine & Spirits Retailers*, 481 F.3d at 12.

While Section (c) of the ordinance limits the types of out-of-state non-profit entities that may provide pet stores with animals for adoption, Plaintiff has not claimed to seek to offer for adoption animals owned by non-profit entities. Rather, Plaintiff has repeatedly asserted that it will sell dogs obtained from breeders. Nor has Plaintiff made even an indirect connection between itself and the ordinance's alleged creation of a "Rhode Island based market." Plaintiff has therefore failed to demonstrate that it is in any way impacted by the residency distinctions the ordinance draws amongst non-profits, and, as in *Wine & Spirits Retailers*, this failure to show "any cognizable harm" divests it of standing to challenge those distinctions.

Plaintiff argues only that the ordinance discriminates facially and in its effect, and has not claimed that the ordinance has a discriminatory purpose. Because Plaintiff lacks standing to claim facial discrimination and cannot establish discrimination in practical effect, the Court need not address whether the statute withstands heightened scrutiny; rather, the Court applies the analysis set forth in <u>Pike v. Bruce Church, Inc.</u>

### 3. Discrimination by Incidental Burden

A law that regulates evenhandedly and does not discriminate on its face, in purpose, or in effect may nonetheless impose an incidental burden on interstate commerce. <u>Cherry Hill Vineyard</u>, 505 F.3d at 36. To determine the law's validity in such cases, the Court applies the balancing test derived from <u>Pike</u> which considers: "(1) the nature of the putative local benefits advanced by the statute; (2) the burden the statute places on interstate commerce; and (3) whether the burden is 'clearly excessive' as compared to the putative local benefits." <u>Pharm. Research & Mfrs. of Am. v. Concannon</u>, 249 F.3d 66, 83-84 (1st Cir. 2001), <u>aff'd sub nom.</u> <u>Pharm. Research & Mfrs. of Am. v. Walsh</u>, 538 U.S. 644 (2003) (citing <u>Pike</u>, 397 U.S. at 142).

Plaintiff maintains that the ordinance "has no stated purpose." However, a "putative" benefit, by definition, need

11

not be spelled out explicitly in the text of the challenged legislation to be legitimate. Cf. Dean Milk Co. v. City of Madison, 340 U.S. 349, 354 (1951) (the validity of an ordinance under the Commerce Clause is not based on its professed purpose). By banning the sale of certain animals by commercial entities, the ordinance evidently seeks to prevent cruelty to these animals that occurs in the course of that trade.[6] There can be little dispute that promoting the humane treatment of animals is a legitimate local interest.[7] See Hughes v. Oklahoma, 441 U.S. 322, 337 (1979) (protecting wild animals, like a state's interest in safeguarding the health and safety of its citizens, is a legitimate local interest); Cavel Int'l, 500 F.3d at 557 ("States have a legitimate interest in prolonging the lives of animals that their population happens to like."). However, Plaintiff argues that the ordinance fulfills no purpose whatsoever, asserting that there is no evidence of inhumane treatment by Plaintiff or other pet stores. This argument does

---

[6] Given the City's concern with inhumane practices of so-called "puppy mills," which cater to the commercial sale of dogs, banning the commercial sale of dogs would logically help prevent such practices by cutting off a source of potential demand.

[7] Defendants state that the ordinance also aims to reduce animal overpopulation and protect consumers, but these additional putative benefits need not be individually addressed for purposes of the Pike analysis.

not advance Plaintiff's Commerce Clause claims, however, because whether a law's putative benefits "actually come into being" has no impact on the Pike analysis. Pharm. Care Mgmt. Ass'n, 429 F.3d at 313. Only the putative benefits of the ordinance need be considered, not its wisdom or effectiveness in implementing these benefits. See id.

As discussed above, the only incidental burden that the ordinance feasibly places on interstate commerce is diminishing dog sales from Plaintiff's out-of-state suppliers. The Commerce Clause is not meant to be a safety net for individual out-of-state entities, but rather to prevent burdening the interstate market as a whole. See Pharm. Care Mgmt. Ass'n, 429 F.3d at 313. Thus, impacting the prospective profits of the specific breeders from which Plaintiff intended to buy dogs can hardly be considered a burden for Commerce Clause purposes. Id. (finding no commerce clause violation where the challenged law would prevent certain for-profit pharmacy benefit managers from doing business in state); Pharm. Research & Mfrs., 249 F.3d at 84 (holding that individual manufacturers' possible loss of profits was not a burden sufficient to violate commerce clause). Even having "devastating economic consequences on a particular interstate firm" does not constitute a burden on interstate commerce under the Pike analysis. Id. at 84 (internal citation

13

and quotation marks omitted).  Thus, compared to the ordinance's putative benefits, any impact the ordinance may have on interstate commerce cannot be deemed "clearly excessive," and Plaintiff's claims that the ordinance runs afoul of the Commerce Clause fail.

A.  Equal Protection Claims

A law that draws distinctions among those it impacts does not automatically violate equal protection rights.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Id.  To establish an equal protection violation, a plaintiff must show that: (1) "compared with others similarly situated, [it] was selectively treated" and (2) that such treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)).  Only where the law uses such suspect classifications or infringes a fundamental right must

the law be subjected to strict judicial scrutiny. <u>City of</u> <u>Cleburne</u>, 473 U.S. at 440.

Plaintiff alleges that the ordinance violates Plaintiff's equal protection rights under the United States and Rhode Island Constitutions because it treats Plaintiff differently from similarly situated entities, with a bad faith intent to injure Plaintiff, and in violation of Plaintiff's "fundamental right to earn a living." Thus, Plaintiff asserts, the ordinance must withstand strict judicial scrutiny.[8]

The test for whether individuals are similarly situated for equal protection purposes is whether "a prudent person . . . would think them roughly equivalent and the protagonists similarly situated." <u>Barrington Cove</u>, 246 F.3d at 8. Because Plaintiff is not a member of any protected class, it must show "an extremely high degree of similarity" between itself and

_____

[8] Although Plaintiff makes separate assertions based on federal and Rhode Island constitutional rights, Rhode Island's equal protection and due process guarantees are analogous to those provided by the United States Constitution. <u>Pelland v.</u> <u>Rhode Island</u>, 317 F. Supp. 2d 86, 97 (D.R.I. 2004) (analysis of Rhode Island equal protection and due process rights is "identical" to parallel federal rights); <u>see also</u> <u>Jones v.</u> <u>Rhode Island</u>, 724 F. Supp. 25, 34–35 (D.R.I. 1989); <u>Kleczek v.</u> <u>Rhode Island Interscholastic League, Inc.</u>, 612 A.2d 734, 740 (R.I. 1992). Therefore, this Court's analysis applies equally to Plaintiff's federal and state equal protection and due process claims.

those to whom it seeks comparison. <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245, 251 (1st Cir. 2007) (internal citation and quotation marks omitted); <u>see also</u> <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 38 (1st Cir. 2013). Plaintiff claims to be similarly situated to "non-profit entities" that the ordinance does not prohibit from selling cats or dogs, but provides no grounds for this contention. Indeed, on the most basic level, the entities are dissimilar: Plaintiff is a for-profit business that sells dogs, while the entities to which Plaintiff compares itself are not-for-profits that rescue and shelter them. The only similarity would seem to be that both involve dogs. But that is like saying a homeless shelter is similarly situated to a luxury hotel because both provide rooms to sleep in. The law of equal protection requires more than superficial similarity, and without any showing that it is similarly situated to those from whom it is singled out, Plaintiff cannot possibly demonstrate an equal protection violation. <u>Cordi-Allen</u>, 494 F.3d at 252 (summary judgment on an equal protection claim is appropriate where "no reasonable jury could find the similarly situated prong met").

Moreover, even if Plaintiff had successfully set forth sufficient facts "to warrant a reasonable inference of substantial similarity," <u>id.</u> at 251, it provides no evidence of

16

"impermissible considerations" governing its treatment. Plaintiff argues that the ordinance purposefully attempts to inhibit it from doing business. In support of this, Plaintiff asserts that the ordinance was only contemplated and enacted after Plaintiff opened for business.[9] To imply pernicious intent based solely on this order of events requires an untenable stretch of the imagination, and falls far short of demonstrating "malicious or bad faith intent to injure." Barrington Cove, 246 F.3d at 7; Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (a plaintiff claiming to be singled out by government action must show that "bad faith or malicious intent to injure" caused differential treatment (quoting Rubinovitz, 60 F.3d at 911)).

Social and economic regulation is generally subject to rational basis review, and is therefore afforded a presumption of validity, not bad faith. Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003). Plaintiff claims that the ordinance infringes on its "fundamental right . . . to earn a living" (Pl. Opp'n 11, ECF No. 15-1), but "it is well settled that no such fundamental right exists," Medeiros v. Vincent, 431

---

[9] Plaintiff also mentions that it had to pay a $25 fee related to a license inspection after it opened, although the City had no license to issue. Plaintiff does not allege any facts relating to this incident indicating that it stemmed from a bad faith intent to discriminate rather than a bureaucratic miscommunication.

F.3d 25, 29 n.3 (1st Cir. 2005).  Thus, rational basis review
applies.

Under rational basis review, a law requires only some
"'reasonably conceivable set of facts' that could establish a
rational relationship between the challenged laws and the
government's legitimate ends."  Kittery Motorcycle, Inc., 320
F.3d at 47 (quoting Montalvo-Huertas v. Rivera-Cruz, 885 F.2d
971, 978 (1st Cir. 1989)).  Plaintiff therefore must show that
there is no plausible basis for the ordinance.  Medeiros, 431
F.3d at 32.  This Plaintiff is unable to do.  A government's
interest in preventing the evils associated with "puppy mills"
that both parties cite to, including inhumane treatment of
animals and overpopulation, are plainly legitimate ends.[10]  See,
e.g., Cavel Int'l, 500 F.3d at 557; Haviland v. Butz, 543 F.2d
169, 177 (D.C. Cir. 1976); Kerr v. Kimmell, 740 F. Supp. 1525,
1529 (D. Kan. 1990).  As discussed supra, a municipality could
rationally determine that prohibiting the sale of certain
animals will help reduce the demand for these animals that
perpetuates pet mills, known for their inhumane practices.
Limiting the sale of animals by commercial establishments could

_____

[10] Plaintiff relies heavily on the fact that the ordinance
has no stated purpose.  However, as set forth in F.C.C. v. Beach
Communications, Inc., legislatures need not articulate their
reasons for enacting statutes.  508 U.S. 307, 315 (1993).

also plausibly help reduce animal overpopulation, and protect consumers from buying sick animals. Contrary to Plaintiff's assertions, the City's grounds for passing the ordinance "may be based on rational speculation unsupported by evidence or empirical data." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993). Because the ordinance easily survives rational basis review, Plaintiff fails to show any equal protection violation.

B.  Unlawful Taking Claims

Plaintiff argues that the ordinance violates its right against a government taking of private property without just compensation. Because Plaintiff's lease allowed it to use the premises "only for the purposes of a Puppy Sales store" (Stip., Ex. B at ¶ 7), it claims that prohibiting the sale of dogs has "deprived [Plaintiff] of all economically viable and reasonable use of its business." (Pl. Br. 15, ECF No. 11-1.) Plaintiff bases its regulatory takings claim on loss of future profits, and on loss of use of its property, sometimes called inverse condemnation. Plaintiff has not satisfied the ripeness requirements that would allow this Court to evaluate the merits of such a claim.[11]

---

[11] Plaintiff only develops its theory relating to an as-applied regulatory taking, but states, without any argument on

A ripe takings claim requires that a plaintiff establish: (1) that "prior state administrative and/or judicial processes . . . have wrought a taking of particular property," and (2) "the sovereign's refusal to provide just compensation for the property taken." Marek v. Rhode Island, 702 F.3d 650, 653 (1st Cir. 2012); see also Downing/Salt Pond Partners, L.P. v. Rhode Island, 643 F.3d 16, 20 (1st Cir. 2011). To satisfy the first prong of this inquiry, Plaintiff must show that a final decision was reached concerning the application of the ordinance to its property. Downing/Salt Pond, 643 F.3d at 20. Although neither party addresses the issue, the Court assumes for present purposes that the ordinance constitutes a final decision.[12] See

the issue, that "this taking was categorical in nature, and Plaintiff should be per se compensated." (Pl. Br. 15, ECF No. 11-1.) Insofar as this constitutes a facial taking claim, it need not meet the same ripeness requirements as a regulatory claim. Gilbert v. City of Cambridge, 932 F.2d 51, 56 (1st Cir. 1991). However, a facial challenge would fail here because Plaintiff has not demonstrated that the enactment of the ordinance categorically deprives its property of any economically viable use. See id. The language of Plaintiff's lease, not the ordinance, or the inherent nature of the premises, requires the space to be used exclusively as a "Puppy Sales store." Moreover, even Plaintiff's lease does not limit it to the sale of dogs exclusively. Plaintiff could easily sell dog supplies and accessories without violating the terms of the lease.

[12] Neither the ordinance nor the parties' arguments indicate that there is any process that might modify the ordinance's impact. Notably, however, the record is silent as to whether Plaintiff closed or moved its store.

Garcia-Rubiera v. Calderon, 570 F.3d 443, 452 (1st Cir. 2009) ("final decision" requirement is satisfied where "there is no pending process that would modify the statute's impact on Plaintiffs" (internal citation and quotation marks omitted)).

However, Plaintiff does not satisfy the second prong of the ripeness inquiry because it has not sought and been denied just compensation. Although, as Plaintiff reasonably points out, Defendant removed its state action to federal court, this does not alter the requirement that Plaintiff exhaust state processes before its takings claim may be addressed. Marek, 702 F.3d at 653 (ripeness requires "a showing that the plaintiff has run the gamut of state-court litigation in search of just compensation"); Stillman v. Town of New Braintree, Civil Action No. 12-cv-12033-TSH, 2013 WL 3830180, at *4 (D. Mass. July 22, 2013) (state claim exhaustion is required to assert a takings claim, regardless of initial filing in state court and subsequent removal). Plaintiff must satisfy the exhaustion requirement regardless of the forum in which it brings its takings claim. See Stillman, 2013 WL 3830180, at *4.

Rhode Island's inverse condemnation remedies provide "an adequate procedural pathway to just compensation," Marek, 702 F.3d at 654, but "even where the most that can be said is that it remains unclear whether the inverse condemnation remedy

applies to the type of taking alleged by the plaintiff," the state litigation requirement stands, Downing/Salt Pond, 643 F.3d at 25 (quoting Deniz v. Municipality of Guaynabo, 285 F.3d 142, 147 (1st Cir. 2002)) (internal quotation marks omitted). This result is not altered by the fact that Plaintiff seeks declaratory relief. See Gilbert v. City of Cambridge, 932 F.2d 51, 64 (1st Cir. 1991) ("[S]o long as the State provides an adequate process for securing compensation, federal equitable intervention in advance of resort to that procedure is premature."). The Takings Clause provides a means of compensation, not a means of deterring government action, and Plaintiff therefore cannot circumvent the ripeness requirements of a takings claim here. See Preseault v. I.C.C., 494 U.S. 1, 11 (1990).

The Court lacks subject matter jurisdiction over unripe claims, and thus will not address whether the "taking" at issue implicates a valid property interest. Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2323, 651 F.3d 176, 188 (1st Cir. 2011) (ripeness is required before a federal court may assume subject matter jurisdiction); see also Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 45 (1st Cir. 2003) (a federal district court may not reach the merits of a removed case when it lacks subject matter jurisdiction). Rather,

because this case was removed from state court, Plaintiff's unripe claims must be remanded.[13] See 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a removed case], the case shall be remanded."); Mills, 344 F.3d at 45.

C.    Due Process Claims

Plaintiff argues that the ordinance violates its due process rights because it is arbitrary and discriminatory, has no legitimate purpose, and has, without notice, deprived Plaintiff of its fundamental right to make a living.[14] Plaintiff invokes substantive due process, and while mentioning procedural defects, fails to set forth the elements necessary to establish

---

[13] To the extent Plaintiff asserts due process claims based on the taking of its property without just compensation, such claims suffer from the same ripeness deficiencies as its takings claim. See Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002) ("Dressing a takings claim in the raiment of a due process violation does not serve to evade the exhaustion requirement."). These claims, all contained in Count Three of Plaintiff's Amended Complaint (Am. Compl. ¶¶ 26-28, ECF No. 6) under the heading "Declaratory Relief (Taking)," must likewise be remanded. Plaintiff's additional due process claims are addressed supra.

[14] Plaintiff argues that the ordinance was enacted "with no reasons given," therefore giving the City's citizens no notice of the law's intent and showing a lack of due process. Thus, Plaintiff claims, the ordinance "is an abuse of government power that shocks the conscience, and is without legitimate purpose." (Pl. Br. 10, ECF No. 11-1.)

a procedural due process claim.[15]  Thus, the Court addresses only

the merits of Plaintiff's substantive due process claims.

When a law implicates a fundamental right, the law will be

analyzed under a "strict scrutiny" standard to determine whether

it violates substantive due process.  Medeiros, 431 F.3d at 32.

However, as in the equal protection context, a law that does not

implicate a fundamental right triggers rational basis review,

and need only bear a rational relationship to a legitimate

government interest.  Id.  Contrary to Plaintiff's claim, the

right to make a living is not a fundamental right.  Id.

Therefore, the ordinance is subject to rational basis review.

When no fundamental right is at stake, substantive due

process and equal protection challenges employ the same rational

basis test.  Id. at 32-33.  As with its equal protection claims,

Plaintiff provides no basis for finding that the ordinance is

---

[15] To establish a procedural due process violation, Plaintiff must show that the ordinance deprived it of a constitutionally protected property interest without due process of law. URI Student Senate v. Town of Narragansett, 631 F.3d 1, 9 (1st Cir. 2011). Although Plaintiff asserts procedural shortcomings, it does not articulate any constitutionally protected property interest, referring broadly only to the deprivation of its rights. But even if Plaintiff could delineate a valid property interest, its asserted procedural deficiencies only fault the ordinance's enactment. Because procedural due process does not apply to the initial enactment of an ordinance, Plaintiff's assertions fall short of showing a procedural due process deprivation. See Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 746 (1st Cir. 1995).

not rationally related to a legitimate government interest.  See supra Part II(B).  Plaintiff again insists that the ordinance's lack of a stated purpose supports its cause, but there is no requirement that a law must state its purpose to survive rational basis review.  See Beach Commc'ns, 508 U.S. at 313-15 (rational basis requirement met by "any reasonably conceivable state of facts" that could be rational grounds for a law).  A substantive due process claim that is not based on the violation of any fundamental right or on a lack of rational basis must otherwise show some form of conscience-shocking behavior.  See Medeiros, 431 F.3d at 32-33; see also Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011) (government action must be "so egregious as to shock the conscience" to show a substantive due process violation).  Because the government action involved in passing the ordinance cannot possibly be deemed conscience-shocking, Plaintiff has no grounds for its substantive due process claim.

D.   Claims of Preemption by State Law

A local ordinance may be preempted by state law in two ways: (1) when the language of the ordinance contradicts the state law's language, or (2) when the state has intended to "thoroughly occupy the field."  Coastal Recycling, Inc. v. Connors, 854 A.2d 711, 715 (R.I. 2004); see also URI Student

<u>Senate v. Town of Narragansett</u>, 631 F.3d 1, 7-8 (1st Cir. 2011).
A local ordinance is invalid under the latter theory "if it
disrupts the state's overall scheme of regulation." <u>Town of E.</u>
<u>Greenwich v. O'Neil</u>, 617 A.2d 104, 109 (R.I. 1992). Plaintiff
claims that the ordinance is preempted by Rhode Island laws
governing the conditions in pet stores, the health of dogs sold
from breeders and pet stores, and pet store licensing. <u>See</u> R.I.
Gen. Laws § 4-19-1 <u>et seq.</u>; <u>id.</u> § 4-25-1 <u>et seq.</u>

Plaintiff does not point to any state law that the
ordinance contradicts. Rhode Island law governing animal care
does not prohibit municipalities from regulating the local sale
of dogs and cats. Rhode Island General Laws Section 4-19-19
states, "No provision of this chapter prohibits any city or town
from adopting any provision of this chapter as a municipal
ordinance." While this does not explicitly authorize
municipalities to enact their own regulations regarding animal
care, it certainly does not, as Plaintiff claims, prohibit them
from doing so either.[16] Thus, the question is whether the
ordinance "disrupts [Rhode Island's] overall scheme of
regulation." <u>Town of E. Greenwich</u>, 617 A.2d at 109.

---

[16] Indeed, many Rhode Island municipalities have regulations
relating to animal care.

Increasing restrictions on the sale of a regulated good does not constitute a disruption of the state's regulatory scheme. See _Amico's Inc. v. Mattos_, 789 A.2d 899, 907 (R.I. 2002) (finding that town regulations imposing more stringent ban on smoking than state laws advanced purpose of state law, and were not preempted). By setting forth as its purposes the "humane care and treatment" of animals, and the restriction of the sale of diseased animals, Rhode Island law shows concerns mirrored and extended by the ordinance. Rhode Island General Law § 4-19-1; _see Amico's_, 789 A.2d at 907. Plaintiff argues that the ordinance disrupts the state's regulatory scheme by rendering null Rhode Island General Laws § 4-19-1 _et seq._ governing animal care. But § 4-19-1's stated goals of ensuring humane treatment and consumer safety do not demonstrate an intention to guarantee the availability of dogs or cats for purchase from retail establishments. See _Cavel Int'l_, 500 F.3d at 554 (no preemption of state law prohibiting slaughter of horses for consumption where federal law was "concerned with inspecting premises at which meat is produced for human consumption . . . rather than with preserving the production of particular types of meat for people to eat"). This applies equally to the "Puppy Lemon Law" to which Plaintiff cites. R.I. Gen. Laws § 4-25-1 _et seq._ (setting forth obligations of dog

sellers and remedies available to dog purchasers).  Plaintiff
therefore fails to show that the ordinance impermissibly invades
an exclusively state-dominated field of law.

    E.   Contract Clause Claims

    Plaintiff's final allegation is that the ordinance violates
the Contract Clause of the United States and Rhode Island
constitutions.[17]   The purpose of the Contract Clause is to
prevent the government from changing the "the relative position
of two parties to an existing contract" after the parties have
assigned their own contractual rights and duties.  S. Terminal
Corp. v. E.P.A., 504 F.2d 646, 680 (1st Cir. 1974).  To show a
Contract Clause violation, a plaintiff must show that the
challenged law substantially impairs an existing contractual
relationship.  United Auto., Aerospace, Agr. Implement Workers
of Am. Int'l Union v. Fortuno, 633 F.3d 37, 41 (1st Cir. 2011).
If the law does create a substantial impairment, it will
nonetheless be valid "as long as it is appropriate for, and
necessary to, the accomplishment of a legitimate public
purpose."  Houlton Citizens' Coal., 175 F.3d at 191.

_____

    [17]  The Rhode Island Contract Clause provides the same
protection as the federal Contract Clause, and is analyzed using
the same standards.  See Rhode Island Bhd. of Corr. Officers v.
Rhode Island, 264 F. Supp. 2d 87, 93 n.4 (D.R.I. 2003), aff'd,
357 F.3d 42 (1st Cir. 2004) (citing Retired Adjunct Professors
v. Almond, 690 A.2d 1342, 1345 n.2 (R.I. 1997)).

Plaintiff argues that the ordinance renders its lease for the pet store retail premises a nullity.[18]  However, it does not follow that a Contract Clause violation occurred simply because Plaintiff's aim when it entered the lease cannot be fully achieved.  Plaintiff's contractual obligation is to make payments on the lease, while its landlord must allow Plaintiff tenancy.[19]  The ordinance has not altered these parties' contractual obligations to each other, see S. Terminal Corp., 504 F.2d at 680, but rather has narrowed the already contractually limited scope of Plaintiff's permitted use of the leased premises.  Any impact the ordinance has on the lease consists of "diminished profitability and therefore diminished ability to keep up obligations," which does not constitute a Contract Clause violation.  Id. (internal quotation marks

---

[18]  Plaintiff also argues that the ordinance impairs its right to contract with suppliers, but the Contract Clause protects only parties to existing contracts, and Plaintiff has provided no evidence that any such contracts existed when the ordinance became effective.  See Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 n.5 (1st Cir. 2013) ("Ordinarily, . . . a state law with only prospective effect will not violate the Contracts Clause because it will not impair an existing contractual relationship.").

[19]  Defendant contends that Plaintiff has failed to fulfill certain business registration and tenancy requirements, and therefore has failed to comply with the lease obligations.  Even if true, the sufficiency of Plaintiff's performance has no bearing on the nature of its contractual relationship or obligations.

omitted); see also Exxon Corp. v. Eagerton, 462 U.S. 174, 190 (1983) ("[A] statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment.").

Even if Plaintiff's contractual obligations were substantially impaired, Plaintiff has not shown that the ordinance is unreasonable or unnecessary to furthering a legitimate government interest. See Houlton Citizens' Coal., 175 F.3d at 191; Fortuno, 633 F.3d at 42. Courts must "defer to legislative judgment as to the necessity and reasonableness of a particular measure" in matters of economic or social regulation. U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 22-23 (1977). This is particularly true when a law implicates private contractual rights. See Houlton Citizens' Coal., 175 F.3d at 191 (courts need not ascertain reasonableness and necessity of impairment to contractual obligation in the case of private contracts if there is no danger that the government "is using its regulatory power to profiteer or otherwise serve its own pecuniary interests"); see also Fortuno, 633 F.3d at 44 ("[T]he heightened deference afforded to [legislation imposing] private contractual impairments is quite substantial."). In light of the City of East Providence's legitimate interest in furthering

the humane treatment of animals, curbing animal overpopulation, and protecting consumers, the ordinance does not run afoul of the federal or state Contract Clause, and Plaintiff's claims on this issue fail.

III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED as to all counts except for Count Three, which is hereby REMANDED to the Rhode Island Superior Court.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  March 31, 2015